UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

PEDRO AGUIRRE,                        §
                                      §
        Plaintiff,                    §
VS.                                   §        CIVIL ACTION NO. C-10-394
                                      §
TRISTAR RISK MANAGEMENT,              §
                                      §
        Defendant.                    §

## ORDER

In this civil action, Plaintiff Pedro Aguirre alleges that Defendant Tristar Risk Management ("Defendant" or "Tristar") breached its duty of good faith and fair dealing when it delayed or denied approval for certain medical procedures, treatments, and devices that had been ordered by Plaintiff's physicians.  (D.E. 1.)   Plaintiff now moves for summary judgment, contending that he is entitled to judgment as a matter of law.  (D.E. 36.)

Conversely, Tristar moves for summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies as required by the Texas Workers' Compensation Act such that this Court is without jurisdiction to provide Plaintiff with a remedy.  (D.E. 37 at 9.)  In the alternative, Tristar contends that Plaintiff's evidence is insufficient to raise an issue of material fact as to its claim that Tristar breached its duty of good faith and fair dealing in its interactions with Plaintiff.  (Id. at 11-12.)  For the reasons stated herein, Plaintiff's Motion for Summary Judgment is DENIED, (D.E. 36), and Defendant's Motion for Summary Judgment, (D.E. 37), is GRANTED.

## I.        Jurisdiction

The Court lacks subject matter jurisdiction over this action.  Plaintiff's only remaining claims are based on Defendant's alleged breach of it duty of good faith and fair dealing in denying or delaying Plaintiff's requests for workers' compensation benefits.  Under Texas law, a trial court has no jurisdiction to award damages against an insurance carrier where the plaintiff's action is predicated on a wrongful denial of benefits unless the plaintiff can demonstrate that he has exhausted his administrative remedies with the Division of Workers' Compensation.  Am. Motorist Ins. Co. v. Fodge, 63 S.W.3d 801, 803-04 (Tex. 2001)).  Plaintiff has not done so in the instant case.

## II.       Factual and Procedural Background

Plaintiff filed this action pro se in County Court at Law No. 1 of Nueces County, Texas on September 16, 2010.  (D.E. 1-2.)  Defendant subsequently removed the action to this Court on December 10, 2010.  (D.E. 1.)  On that same day, Defendant filed a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) and, in the alternative, Motion for a More Definite Statement.  (D.E. 2.)  Plaintiff responded to this motion, (D.E. 5), and thereafter filed a document entitled "Plaintiffs [sic] Cause of Auction [sic]."  (D.E. 8.)  The Court construed this pleading as an amended complaint and denied Defendant's Motion to Dismiss as moot.  (D.E. 9.)

On January 10, 2011, Tristar again moved to dismiss Plaintiff's Complaint,  (D.E. 11, 12), to which Plaintiff responded.  (D.E. 15.)  On January 24, 2011, the Court granted in part and denied in part Defendant's Motion to Dismiss, dismissing without prejudice Plaintiff's claim for intentional infliction of emotional distress, dismissing with prejudice Plaintiff's claim for the unauthorized practice of medicine, and retaining Plaintiff's cause of action for breach of the duty of good faith and fair dealing.  (D.E. 19 at 11.)

On February 22, 2011, Plaintiff filed a one-page motion for summary judgment, asserting that he is entitled to such relief because "Defendants [sic] evidence is insufficient [t]o establish solo defense to claim [it] asserts.  Record shows that the claimant has evidence on all essential elements of his claim, and there is no material conflicting evidence that must be weighed and that would justify a trial."  (D.E. 26 at 1.)  On March 4, 2011, the Court denied Plaintiff's Motion for Summary Judgment.  (D.E. 27.)

On September 6, 2011, Plaintiff filed a document entitled "Undisputed Facts in Support of its Motion for Summery [sic] Judgment."  (D.E. 32.)  The Court construed this motion as one for summary judgment, and denied it on September 9, 2011.  (D.E. 33.)  The Court also denied Plaintiff's pleading styled "Dispositive Motion," (D.E. 34), because it was void of exhibits, affidavits, or other evidence.  (D.E. 35.)  On September 14, 2011, Plaintiff filed the instant Motion for Summary Judgment.  (D.E. 36.)  On September 15, 2011, Defendant filed its Motion for Summary Judgment, discussed herein.  (D.E. 37.)   On September 23, 2011, Plaintiff responded in opposition.  (D.E. 38.)

In support of his motion for summary judgment, Plaintiff offers relevant portions of his medical records.[1]  Tristar offers the following summary judgment evidence:

| | |
|---|---|
| Ex. A: | Affidavit of Elsa Gaitan ("Gaitan"), a Tristar claims supervisor; |
| Ex. B: | Deposition of Donna Marroquin, a registered nurse and certified case manager; |
| Ex. D: | Affidavit of Victor Molina, a Tristar certified case manager; |
| Ex. E: | Affidavit of Richard Thibault, vice president and general counsel of Tristar; |

---

[1] Plaintiff purports to introduce these records as self-authenticating under Federal Rule of Evidence 902.  These records are not self-authenticating.  However, Plaintiff swears under penalty of perjury that his offered exhibits are "true copies" from his medical records, and his signature is notarized.  (D.E. 36-1.)

Ex. F:       Excerpts of Deposition Upon Written Questions to Risk Services Management; and

Ex. G:       Internal "Notepad" [2] entries concerning Plaintiff's impairments, the medical care ordered and approved, and the medical services received.

(D.E. 37.) [3]

The uncontested summary judgment evidence establishes the following.

In September 2008, Plaintiff was an employee of Unique Staffing.  (D.E. 37, Ex. G at 2.) On September 10, 2008, while working at the Port of Corpus Christi, Plaintiff tripped over some loose boards and fell backwards from the back of a truck onto a  concrete surface, injuring himself.  (Id.)  The next morning, Plaintiff's left foot was swollen and bruised.  (Id. at 3.)  Later that evening, he was seen by Dr. Fuentes, who applied a soft cast, provided crutches, and prescribed pain medication.  (Id.)  A few days later, Dr. Fuentes removed the cast and fitted Plaintiff with a boot.  (Id.)  Dr. Fuentes also placed Plaintiff on restricted work duty.  (Id.)

On March 15, 2008, an MRI revealed that Plaintiff had a displaced fracture through the plantar aspect of the calcaneus posteromedially.  (Id. at 7.)  On September 29, 2008, Dr. Williams, an orthopedic specialist, saw Plaintiff and diagnosed him with a calcaneal fracture of the left foot and ankle.  (Id. at 4, 8.)  Dr. Williams informed Plaintiff that Plaintiff could continue to work, but that he must wear his splint/cast at all times, use crutches, and refrain from operating heavy equipment due to his use of pain medications.  (Id. at 8.)

On October 24, 2008, Dr. Williams sought authorization from Tristar to provide Plaintiff with an external bone-growth stimulator.  (Id. at 9-10.)  Tristar claims adjuster Victor Molina forwarded the request to an independent physician for review.  (Id.)  Dr. James Butler, an orthopedic surgeon, recommended that the request for the bone-growth simulator be denied

---

[2] "Notepad" is simply a Microsoft program word processing tool that allows its user to create files.
[3] Defendant did not submit an Exhibit C.

because three months had not yet elapsed since the date of the injury.  (D.E. 37, Ex. G at 11-12.) Plaintiff did not appeal this denial.

On October 29, 2008, Plaintiff suffered a second fall, which resulted in the aggravation of the injury to Plaintiff's left foot, and in other injuries.  (Id.)  At the time of the accident, Plaintiff was moving a shipment of clothes to a rack on the floor when he tripped over a stool and fell onto his left shoulder.  (Id. at 17.)  Plaintiff was taken by ambulance to Christus Spohn South Hospital, where he was treated and released with a diagnosis of a fracture to his left shoulder, and contusions to his head, neck, and shoulders.  (Id.)  Plaintiff was referred to orthopedist Dr. Breckenridge for treatment of his shoulder and right thumb.  (Id.)

On December 24, 2008, Tristar received a preauthorization request for Plaintiff to receive physical therapy for his foot and shoulder.  (Id. at 24.)  Tristar authorized the physical therapy as requested.  (Id.)

On January 2, 2009, Dr. Breckenridge sought approval from Tristar for recommended shoulder surgery, as well as a cardiac consultation prior to surgery.  (Id. at 26-27.)  Tristar Notepad listings dated January 6, 2009, indicate that Plaintiff was approved for the cardiac consultation, and that the surgery needed to be scheduled as soon as possible.  (Id. at 28.)

On January 14, 2009, claims supervisor Gaitan inquired as to the cost of the electric scooter that Diana Marroquin, a nurse and medical case manager, had requested in an email.  (Id. at 30.)

On January 21, 2009, Dr. Grosser, a foot specialist, saw Plaintiff for further evaluation of his heel fracture.  (Id. at 31.)  Dr. Grosser found that the fracture had healed, but that Plaintiff's left foot and ankle were still tender.  (D.E. 37, Ex. G at 31.)  Dr. Grosser recommended

aggressive physical therapy, as well as orthotic shoe inserts.  (Id.)  Gaitan noted that a scooter was still recommended, and that Dr. Fuentes was working on a letter of medical necessity.  (Id.)

On January 23, 2009, Plaintiff was scheduled to see a cardiologist.  (Id. at 30.)

Tristar Notepad listings dated January 26, 2009, indicate that Dr. Fuentes recommended that Plaintiff receive a steroid injection in his hand, however, Gaitan stated that she did not know if the recommended injection had been approved or needed precertification.  (Id. at 31.)

On January 28, 2009, Tristar received a preauthorization request from Dr. Grosser for orthotic shoe inserts.  (D.E. 37, Ex. G at 32-33.)

On February 2, 2009, Tristar received a preauthorization request from Dr. Breckenridge for rotator cuff surgery.  (Id. at 34-35.)

On February 3, 2009, Tristar determined that it would not cover the cost of orthotic inserts.  (Id. at 36-37.)  Plaintiff challenged this decision, and the issue was referred to a physician advisor for further review.  (Id. at 41-42.)  On February 27, 2009, Tristar approved right and left orthotic shoe inserts for Plaintiff.  (Id. at 43.)

On March 2, 2009, Gaitan noted that a cardiologist had cleared Plaintiff for surgery, and that Plaintiff's shoulder surgery was scheduled with Dr. Breckenridge for March 6, 2009.  (Id. at 46.)  She noted further that Plaintiff's heel was healing.  (Id.)  In addition, she observed that Plaintiff's plantar fascilis was being treated with the use of orthotic inserts.  (D.E. 37, Ex. G at 46.)  On March 4, 2009, Dr. Grosser again saw Plaintiff for Plaintiff's continued foot pain.  (Id. at 47, 48.)

On March 6, 2009, Plaintiff underwent rotator cuff surgery.  (Id. at 47.)  Tristar employee Socorro Chapman noted that he would meet with Dr. Breckenridge to obtain a possible date for Plaintiff's maximum medical improvement.  (Id. at 49.)

On March 21, 2009, Tristar received a request for physical therapy following Plaintiff's rotator cuff surgery.  (Id. at 54-55.)  Tristar Notepad listings dated March 25, 2009, indicate that Plaintiff had been receiving and was continuing to receive temporary income benefits ("TIBs").  (Id. at 49.)

On March 26, 2009, Gaitan met with Plaintiff and Dr. Breckenridge for Plaintiff's three-week post-operative appointment.  (Id. at 56.)   Gaitan noted that Plaintiff's arm was still in a pillow sling, but that he was performing pendulum exercises.  (Id.)  A prescription for a formal physical therapy program was provided, as well as a release for light duty.  (Id.)  Plaintiff was scheduled to return to Dr. Breckenridge on April 23, 2009.  (Id. at 58.)

On May 19, 2009, Plaintiff sought an extension through June 5, 2009, to complete his physical therapy sessions because he had not begun attending these sessions until April 29, 2009.  (Id. at 61.)   Plaintiff was granted a one-week extension.  (Id.)   On May 26, 2009, Plaintiff requested a second round of physical therapy.  (Id. at 64.)   Tristar approved this request for physical therapy, to be administered two times a week for four weeks, through June 26, 2009.  (Id. at 65.)  On July 8, 2009, Plaintiff requested an additional set of physical therapy sessions.  (Id. at 75-79.)   Tristar sent the request to a physician advisor for review, and the advisor recommended that this third round of physical therapy be denied.  (Id. at 78-79.)

In bringing this action, Plaintiff alleges that Tristar breached its duty of good faith and fair dealing by: (1) failing to approve his request for an electric scooter or electric wheelchair; (2) disputing his claims concerning the injury he suffered as the result of his October 20, 2008 accident; (3) delaying authorization for surgery on his rotator cuff; (4) denying authorization for physical therapy; (5) delaying or denying coverage for injuries to his hand; and (6) delaying the approval of an external bone-growth simulator.  (See D.E. 8 at 1-3.)  In Plaintiff's Motion for

Summary Judgment, he also claims that Defendant improperly delayed the approval of his request for orthotic shoe inserts.  (D.E. 36-1 at 2, 4.)[4]

## III.    Discussion

### A.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The substantive law identifies which facts are material.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996).  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Judwin Props., Inc., v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  See Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986); Lynch Properties, Inc. v. Potomac Ins. Co., 140 F.3d 622, 625 (5th Cir. 1998).  If the moving party meets this burden, "the non-moving party must show that summary judgment is inappropriate by setting forth specific facts showing the existence of a genuine issue concerning every essential component of its case." Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 247 (5th Cir. 2003).  The nonmovant's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory

---

[4] Plaintiff's Motion for Summary Judgment (D.E. 36), and his Response to Defendant's Motion for Summary Judgment (D.E. 38), express Plaintiff's dissatisfaction with the handling of discovery in this case.  Discovery closed on September 30, 2011.  (D.E. 16.)  Pursuant to the Court's General Order, (D.E. 17), discovery disputes are to be brought to the Court's attention by making a joint telephone call to the case manager.  As such, the discussion of discovery issues in Plaintiff's pleadings is inappropriate and the Court will not address them.

allegations, by unsubstantiated assertions, or by only a scintilla of evidence." <u>Willis v. Roche Biomedical Labs., Inc.</u>, 61 F.3d 313, 315 (5th Cir. 1995); <u>see also</u> <u>Brown v. Houston</u>, 337 F.3d 539, 541 (5th Cir. 2003) (noting that "improbable inferences and unsupported speculation are not sufficient to defeat summary judgment").

It is well-established that "[t]he moving party need not produce evidence negating the existence of a material fact, but need only point out the absence of evidence supporting the nonmoving party's case." <u>Saunders v. Michelin Tire Corp.</u>, 942 F.2d 299, 301 (5th Cir. 1992). Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the non-moving party, no reasonable jury could return a verdict for that party. <u>Rubinstein v. Adm'rs of the Tulane Educ. Fund</u>, 218 F.3d 392, 399 (5th Cir. 2000).

Courts must give the pleadings of <u>pro se</u> litigants liberal construction. <u>Oliver v. Scott</u>, 276 F.3d 736, 740 (5th Cir. 2002). Even so, <u>pro se</u> litigants are obligated to comply with the Federal Rules of Civil Procedure and to present competent summary judgment evidence. <u>See Gordon v. Watson</u>, 622 F.2d 120, 123 (5th Cir. 1980). Further, a <u>pro se</u> litigant's burden on summary judgment is comparable to that of a represented party in that he must present evidence to the district court that demonstrates a genuine issue of material fact. <u>See Murrell v. Bennet</u>, 615 F.2d 306, 309 (5th Cir. 1980).

**B.      Exhaustion of Administrative Remedies**

**1.      Administrative Framework**

Under Texas law, the Texas Department of Insurance, Division of Workers' Compensation ("DWC") has exclusive jurisdiction to determine a claimant's entitlement to workers' compensation benefits. <u>In re Texas Mut. Ins. Co.</u>, ___ S.W.3d ___, 2011 WL 3435738 *1 (Tex. App.-Austin Aug. 3, 2011) (citing <u>Am. Motorist Ins. Co. v. Fodge</u>, 63 S.W.3d 801, 803-

04 (Tex. 2001)).  Consequently, without a showing that the DWC has issued a final decision as to the disposition of benefits in a particular case, a trial court has no jurisdiction to award damages against an insurance carrier where the plaintiff's action is predicated on a wrongful denial of benefits.  Fodge, 63 S.W.3d at 803-04 (holding that, under Texas law, a claimant may not "prosecute a lawsuit against a carrier to recover benefits and damages resulting from a denial of benefits without a prior determination by the [DWC] . . . ." that benefits are due the claimant); see also In re Texas Mut. Ins. Co., 2011 WL 3435738 at *3 (noting that the court's holding in Fodge also applies to claims of improper delay in the distribution of benefits).  This is so because an award of damages for failure to provide a benefit would be the equivalent of an order to provide a benefit, which would "circumvent the [DWC]'s exclusive authority."  Id.  In the instant case, because all of Plaintiff's claims concern the improper denial of workers' compensation benefits, or delay in their distribution, this Court lacks jurisdiction unless and until Plaintiff can demonstrate that he has exhausted his administrative remedies with the DWC, or that some exception to the exhaustion requirement applies.  See id.

In Texas, the administrative process for the disposition of workers' compensation consists of several stages.  See Cervantes v. Tyson Foods, Inc., 130 S.W.3d 152, 157 (Tex. App.-El Paso 2003).  It begins with informal claims resolution through a non-adversarial "benefit review conference" conducted by a benefit review officer.  See Tex. Lab. Code Ann. §§ 410.021-410.034 (West 2011).  From the benefit review conference, the parties may proceed, by agreement, to arbitration.  Id. § 410.104.  Alternatively, if the parties do not agree to arbitrate, a party may seek relief at a contested-case hearing.  See id. §§ 410.151-410.169.  The third tier of the disposition process involves a review, by an administrative appeals panel, of the decision produced as the result of a contested-case hearing.  See id. §§ 410.201-410.208.  A party who has

been aggrieved by a decision of the appeals panel may seek judicial review.  See id. §§ 410.251-410.308.  Otherwise, the decision of the administrative appeals panel is final.  See id. § 410.205.

The fundamental issue to be decided in all of these proceedings is whether a claimant is entitled to workers' compensation benefits.  Under Texas law, a claimant is entitled to such benefits where he can demonstrate (1) that he has suffered a compensable injury, and (2) that the treatments he requests are medically necessary to treat that injury.  See In re Texas Mut. Ins. Co., 2011 WL 3435738 at *4 (citing Tex. Lab. Code Ann. § 408.021(a)) (noting that a worker "who sustains a compensable injury is entitled to all health care reasonably required by the nature of that injury").  A trial court, therefore, lacks jurisdiction to adjudicate any claim predicated on a denial of benefits where a plaintiff has not received a determination from the DWC as to both the compensability of his injury and the medical necessity of requested treatment.  See id. at *3, *4.

### 2.      Compensability

The Court concludes that, in this case, Plaintiff cannot demonstrate that he has exhausted his administrative remedies as to the issue of compensability, and that this failure is dispositive of the action.  A party properly exhausts his administrative remedies as to compensability when he receives a final decision on the issue from the DWC's administrative appeals panel.  See Stintson v. Ins. Co. of the State of Pennsylvania, 286 S.W.3d 77, 84 (Tex. App.-Houston [14 Dist.], 2009).  Alternatively, a party can effectively exhaust remedies as to compensability on a showing that the parties have dealt with the issue in a benefit dispute agreement ("BDA"), which is a form of binding mediation used by the DWC.  See England, 2011 WL 3567084 *1, *2 (S.D. Tex. Aug. 12, 2011) (holding that plaintiff had exhausted her administrative remedies as to compensability where compensability had been addressed in a BDA); see also In re Texas Mut. Ins Co., 2011 WL 3435738 at *4 (noting that the compensability of Plaintiff's injuries had been

exhausted where the parties and the DWC signed a BDA); see also Pickett v. Texas Mut. Ins. Co., 239 S.W.3d 826, 837 (Tex. App.-Austin 2007) (reasoning that a BDA between the parties constituted an effective administrative exhaustion of the issue of compensability, though the BDA did not address every necessary issue).

In this case, Plaintiff presents no evidence that he received a final decision as to the compensability of his injuries from the DWC, or that he and representatives of Defendant Tristar agreed on the matter in a BDA.  Though Defendant concedes in its internal files that injuries to Plaintiff's "left shoulder, left foot, right thumb, [and] head and neck contusions" are compensable, (D.E. 37-6 at 19, 28), this does not constitute a formal adjudication by the DWC or its legal equivalent, because there is no indication that the DWC was ever involved in any dispute or agreement between the parties.  Accordingly, Plaintiff cannot demonstrate that he exhausted his administrative remedies with respect to the compensability of any of his injuries.

In his Response to Defendant's Motion for Summary Judgment, Plaintiff does not contend that he has exhausted his administrative remedies.  Rather, he argues that a workers' compensation claimant need not demonstrate exhaustion where a carrier agrees to provide all reasonable and necessary coverage and subsequently denies coverage for a prescription medication incident to the agreed-upon treatment.  (D.E. 38 at 5.)  Though this assertion is unaccompanied by citation, it appears that Plaintiff references the Fifth Circuit's decision in Gregson v. Zurich Am. Ins. Co., 322 F.3d 883 (5th Cir. 2003).  However, the exception to the exhaustion requirement recognized by the court in Zurich does not apply to the facts of the instant case.  Unlike the plaintiff in Zurich, Plaintiff in this case presents no evidence that Defendant agreed to provide all reasonable and necessary coverage for any of his injuries.

Accordingly, the narrow exception formulated by the <u>Zurich</u> court is inapplicable to the case at bar.

Because Plaintiff presents no evidence that he exhausted his administrative remedies as to the compensability of his injuries, the Court need conduct no further analysis. Plaintiff's failure to exhaust his remedies with the DWC deprives this Court of jurisdiction to consider the merits of Plaintiff's claims. Accordingly, Defendant is entitled to summary judgment as a matter of law.

### 3.    Medical Necessity

Even were the Court to conclude that Defendant's documented concessions that some of Plaintiff's injuries were compensable satisfied the exhaustion requirement under Texas law, the Court could still not adjudicate several of Plaintiff's claims. Plaintiff presents no evidence that he received a final determination, or its legal equivalent, as to the medical necessity of several requested treatments. <u>See</u> <u>In re Liberty Ins. Corp.</u>, 321 S.W.3d 630, 637 (Tex. App.-Houston [14 Dist.] 2010) ("Even where a claimant has exhausted his administrative remedies applicable to compensability, dismissal for lack of jurisdiction may be warranted if claimant failed to exhaust his administrative remedies with regard to medical necessity.") (citing <u>Cunningham Lindsey Claims Mgmt., Inc. v. Snyder</u>, 291 S.W.3d 472, 477 (Tex. App.-Houston [14 Dist.] 2009)). In order to properly exhaust administrative remedies as to this issue, Plaintiff must demonstrate that he has received a final determination as to the medical necessity of treatments from the DWC, or that the insurance carrier has acknowledged that such treatments are medically necessary by preauthorizing them. <u>See</u> <u>Snyder</u>, 291 S.W.3d at 479; <u>see also</u> <u>In re Texas Mut. Ins. Co.</u>, 2011 WL 3435738 at *4 (noting that where a carrier has preauthorized a particular treatment, a claimant need not demonstrate that he has received a final determination from the DWC as to the

issue).  In <u>Texas Mutual</u>, the court reasoned that a carrier acknowledges that a treatment is medically necessary when it preauthorizes that treatment because carriers "must approve requests for preauthorization based on the medical necessity of the requested healthcare."  <u>Id.</u> With this framework in place the Court evaluates Plaintiff's remaining claims.

The Court concludes that Plaintiff presents no evidence that the he has received a determination from the DWC that an electric scooter, or an electric wheelchair, were medically necessary to treat his injuries.  These treatments require preauthorization because they cost over $500 apiece.  (D.E. 37 at 13); Tex. Admin. Code Ann. § 134.600. Plaintiff presents no evidence that Defendant Tristar preauthorized such treatments.  Thus, Plaintiff has not exhausted his administrative remedies on the issue of medical necessity as to these treatments.

Similarly, Plaintiff presents no evidence that he received a final determination from the DWC that the requested third round of physical therapy was medically necessary to treat a compensable injury.  Additionally, Plaintiff cannot demonstrate that Defendant admitted that the treatment was medically necessary in preauthorizing it. [5]   Consequently, Plaintiff has not exhausted his administrative remedies as to the medical necessity of the denied physical therapy. The Court lacks jurisdiction to hear claims predicated on the denial of physical therapy.

Defendant did preauthorize (1) rotator cuff surgery, (2) orthotic shoe inserts and (3) an external bone-growth simulator.  As noted, preauthorization constitutes an admission that the preauthorized treatment is medically necessary for purpose of administrative exhaustion.  Thus, had Plaintiff demonstrated that he had exhausted his administrative remedies with respect to the compensability of his injuries, the Court would have had jurisdiction to adjudicate his claims for improper delay in the administration of these treatments.

---

[5] Physical therapy is a treatment that requires preauthorization under Texas law.  Tex. Admin. Code  Ann. § 134.600.

C.      **Breach of Duty of Good Faith and Fair Dealing**

The Court concludes that, even had Plaintiff exhausted his administrative remedies as to the issue of compensability, he would not be entitled to relief on the merits.  Plaintiff presents no evidence that Defendant Tristar breached its duty of good faith and fair dealing in delaying the authorization of the rotator cuff surgery, orthotic shoe inserts or external bone-growth simulator.

Under Texas law, "a workers' compensation insurance policy is a three-party contract between the carrier, the employer, and the employee.  The carrier owes the employee a duty of good faith and fair dealing: a duty on the part of the carrier to deal fairly and in good faith with an injured employee in the processing of a worker's compensation claim."  Bestor v. Service Lloyds Ins. Co., 276 S.W.3d 549, 552 (Tex. App.-Waco 2008) (citing Aranda v. Ins. Co. of N. Am., 748 S.W.2d 210, 212 (Tex. 1998)).

For a worker's compensation claimant to prevail on a claim for breach of the duty of good faith and fair dealing, he must show: (1) the absence of a reasonable basis for denying or delaying payment of the benefits of the policy and (2) the insurer knew or should have known there was not a reasonable basis for denying the claim or delaying payment of the claim.  Nat'l Union Fire Ins. Co. v. Dominguez, 873 S.W.2d 373, 376 (Tex. 1994).  In 1997, the Texas Supreme Court clarified the standard for making out a claim stating that "an insurer will be liable if the insurer knew or should have known that it was reasonably clear that the claim was covered."  Universe Life Ins. Co. v. Giles, 950 S.W.2d 48, 55 (Tex. 1997).  However, evidence showing only a wrongful denial of a claim does not demonstrate bad faith.  Douglas v. State Farm Lloyds, 37 F. Supp. 2d 532, 536-37 (S.D. Tex. 1999); Aranda, 748 S.W.2d at 213. Moreover, a "bona fide dispute about the insurer's liability on the contract does not rise to level

of bad faith." Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 17 (Tex. 1994); Robinson v. State Farm Fire & Cas. Co., 13 F.3d 160, 162 (5th Cir. 1994). Rather, the issue of bad faith "focuses not on whether the claim was valid, but on the reasonableness of the insurer's conduct in rejecting the claim." Lyons v. Millers Casualty Ins. Co. of Texas, 866 S.W.2d 597, 600 (Tex. 1993); Douglas, 37 F. Supp. 2d at 536.

### 1.    Rotator Cuff Surgery

The Court concludes that Defendant did not breach its duty of good faith and fair dealing in its delay in authorizing the rotator cuff surgery. Plaintiff's amended complaint states that on December 4, 2008, his orthopedic doctor recommended surgery on his rotator cuff. (Id.) The surgery was performed on March 6, 2009. (Id.) Plaintiff contends that this delay was "unreasonable." (Id.) The Court disagrees.

On January 2, 2009, Plaintiff called Defendant to inquire as to the status of his request for a consultation with a cardiologist, which was necessary to clear him for surgery, and his request for the surgery itself. (D.E. 37, Ex. G at 26.) Defendant informed Plaintiff that no requests had been made at that time, and advised him to call his provider and ask the provider to submit the requests. (Id.) On January 30, 2009, Defendant received the request for the surgery and approved it on February 2, 2009. (D.E. 37, Ex. G at 33-35.) Here, Defendant did not deny the claim, but rather approved it within three days of receiving the request. Thus, there is no basis for a finding that Defendant breached the duty of good faith and fair dealing with respect to Plaintiff's shoulder surgery.

### 2.    External Bone-Growth Simulator

Similarly, the Court concludes that Defendant did not breach its duty of good faith and fair dealing in its delay in the authorization of a bone-growth simulator. On October 22, 2008, a

preauthorization request for the bone-growth simulator was submitted to Defendant.  (D.E. 37, Ex. C at 2.)  Defendant then submitted the request to an independent physician, who determined that it was not medically necessary to treat Plaintiff's injuries.  (Id; D.E. 37, Ex. G at 9-12.) Plaintiff admits that he received the bone-growth simulator approximately five weeks after the initial denial.  (D.E. 8 at 3.)

Plaintiff fails to show that Defendant lacked a reasonable basis for the delay in its authorization of the bone-growth simulator.  Defendant referred the request to an independent physician who reviewed the claim and determined that the simulator was unnecessary.  (D.E. 37, Ex. G at 11-12.)  Without any evidence that the independent physician's report was not objective or that Defendant's reliance on it was unreasonable, Plaintiff cannot sustain a claim for breach of the duty of good faith and fair dealing.  Connolly, 910 S.W.2d at 563; Packer, 881 S.W.2d at 177 (Tex. App.-Houston [1st Dist] 1994).

### 3.    Orthotic Shoe Inserts

The Court further concludes that Defendant did not breach its duty of good faith and fair dealing in delaying preauthorization for orthotic shoe inserts.  On January 28, 2009, Defendant received a preauthorization request from Dr. Grosser for these inserts  (D.E. 37, Ex. G at 32-33), and on February 3, 2009, it denied the request.  (D.E. 37, Ex. G at 36-37.)  Plaintiff appealed, and the issue was referred to a physician advisor for further review.  (D.E. 37, Ex. G at 41-42.) On February 27, 2009, Tristar approved right and left orthotic shoe inserts for Plaintiff.  (D.E. 37, Ex. G at 43.)

To establish a breach of duty, Plaintiff must show that Tristar lacked a reasonable basis for denying or delaying the claim.  See Higginbotham v. State Farm Mut. Auto Ins. Co., 103 F.3d 456, 459 (5th Cir. 1997).  Here, Defendant has shown that it initially denied the shoe inserts

because "[e]vidence based guidelines necessitate documentation of a trial with prefabricated orthotics and a statement identifying that custom orthotics are needed for long term treatment to support the medical necessity of custom orthotics." (D.E. 37, Ex. G at 36.)  The Court concludes that this was a reasonable basis for denying Plaintiff's request.

Even if Plaintiff could show that Defendant wrongfully denied the request for the shoe inserts, evidence showing only a wrongful denial of a claim does not demonstrate bad faith. Douglas, 37 F. Supp. 2d at 536-37 (citing U.S. Fire Ins. Co. v. Williams, 955 S.W.2d 267, 268 (Tex. 1997).   An insurer will be liable for a breach of its duty of good faith and fair dealing only where it knew or should have known that it was reasonably clear that the disputed claim was covered.  Giles, 950 S.W.2d at 167.  Plaintiff has not shown that Defendant knew or should have known that it was reasonably clear Plaintiff's claims were covered.

As the foregoing analysis makes clear, Plaintiff is not entitled to any relief.  Because Plaintiff cannot demonstrate that he exhausted his administrative remedies as to the compensability of any of his injuries, this Court lacks jurisdiction to adjudicate his claims.  Even assuming that Plaintiff had exhausted his remedies as to compensability, the only treatments for which he can show a final decision as to medical necessity are the (1) orthotic shoe inserts, (2) rotator cuff surgery, and (3) external bone-growth simulator.  Plaintiff presents no evidence indicating that Defendant breached its duty of good faith and fair dealing in its administration of these treatments.

**IV.     Conclusion**

For the reasons set forth above, Defendant's Motion for Summary Judgment is GRANTED.   (D.E. 37.)   In addition, Plaintiff's Motion for Summary Judgment is DENIED. (D.E. 36.)

SIGNED and ORDERED this 30th day of November, 2011.

Janis Graham Jack
Senior United States District Judge